**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

|  |  |  |
|---|---|---|
| BOWLING GREEN-WARREN COUNTY COMMUNITY HOSPITAL CORPORATION, *et al.*, | ) ) ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 1:19-cv-148-GNS |
| v. | ) ) ) | |
| PURDUE PHARMA L.P., *et al.*, | ) | |
| Defendants. | | |

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendants Walmart Inc.[1] and Wal-Mart Stores East, LP, ("Walmart") hereby remove the above-captioned action from the Circuit Court of Warren County, Civil Division 1, Kentucky, case number 19-CI-01146, to the United States District Court for the Western District of Kentucky.

As grounds for removal, Walmart states:

1.      Plaintiffs served Walmart with the Amended Complaint on or about September 17, 2019.

2.      In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

---

[1] Plaintiff named Wal-Mart Inc. as a defendant to this action; as of February 1, 2018, Wal-Mart Stores Inc. became known as Walmart Inc.

3.      Plaintiffs' claims arise under federal law and effectively allege that Walmart and certain other Defendants violated and are liable under a federal statute, the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.*, (the "CSA") and its implementing regulations.  *See* Am. Compl., ¶¶ 63, 162, 574.

4.      This Court has original jurisdiction over the subject action pursuant to 28 U.S.C. § 1331 since it presents a federal question.  As alleged, this suit falls within the CSA, which supplies this federal question.

5.      Venue is proper.  Pursuant to 28 U.S.C. § 1441 *et seq.*, this case may be removed from the Circuit Court of Warren County, Civil Division 1, Kentucky, to the United States District Court for the Western District of Kentucky, as the action is pending within the district.

## NATURE OF REMOVED ACTION

6.      On or about August 21, 2019, Plaintiffs in the above-captioned matter filed *Bowling Green-Warren County Community Hospital Corp., et al. v. Purdue Pharma L.P., et al.* in the Circuit Court of Warren County, Kentucky, case number 19-CI-01146, alleging claims relating to prescription opioid medications.

7.      On or about September 17, 2019, Plaintiffs served Walmart with the Amended Complaint, attached as **Exhibit A**.

8.      Walmart has not responded to the Amended Complaint in state court.

9.      The Amended Complaint asserts claims against three groups of Defendants.

10.     The first group of Defendants, "Marketing Defendants" consists of Purdue Pharma L.P.; Purdue Pharma, Inc.; The Purdue Frederick Company, Inc.; Richard Sackler; Beverly Sackler; David Sackler; Ilene Sackler Lefcourt; Jonathan Sackler; Kathe Sackler; Mortimer D.A. Sackler; Theresa Sackler; John Stewart; Mark Timney; Craig Landau; Russell Gasdia; Tessa F. Rios; Amy K. Thompson; Amneal Pharmaceuticals, LLC; Amneal Pharmaceuticals, Inc.; Teva

Pharmaceutical Industries Ltd. (incorrectly named "Teva Pharmaceutical Industries, Ltd." in the Complaint)[2]; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Watson Laboratories, Inc.;[3] Actavis Pharma, Inc. f/k/a Watson Pharma Inc.; Actavis LLC; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Abbott Laboratories; Abbott Laboratories, Inc.; Assertio Therapeutics f/k/a Depomed, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals, Inc.; Mallinckrodt, LLC; Mallinckrodt plc; SpecGX LLC; Allergan plc f/k/a Actavis plc; and Watson Pharmaceuticals, Inc.  Am. Compl. ¶¶ 89-161.

11.     The second group of Defendants, "Distributor Defendants," consists of AmerisourceBergen Drug Corporation; Anda, Inc.; Cardinal Health, Inc.; H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co.; Henry Schein, Inc.; Miami-Luken, Inc.; Richie Pharmacal Co. *Id.* ¶¶ 162- 179.

12.     The third group of Defendants, "National Retail Pharmacies," consists of CVS Health Corporation; CVS Pharmacy, Inc.; CVS Indiana, L.L.C.; Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center, Inc.; Walgreens Boots Alliance, Inc.; Walgreen Co.; Walgreen Eastern Co., Inc.; and Walmart.  *Id.* ¶¶ 180-192.

13.     The "Distributor Defendants" and the "National Retail Pharmacies" are collectively referred to in the Amended Complaint as the "Supply Chain Defendants."  *Id.* ¶ 193.

14.     The Amended Complaint asserts seven causes of action against Walmart and the

---

[2] Teva Pharmaceutical Industries Ltd. is not listed in the Complaint's caption but is referenced in the body of the Complaint.  Teva Pharmaceutical Industries Ltd. contests and does not concede that is a party to this action and consents to removal only out of an abundance of caution.

[3] Watson Laboratories, Inc. is not listed in the Complaint's caption but is referenced in the body of the Complaint.  Watson Laboratories, Inc. contests and does not concede that is a party to this action and consents to removal only out of an abundance of caution.

other Supply Chain Defendants: (1) violation of Kentucky's Consumer Protection Act; (2) Negligence; (3) Nuisance; (4) Unjust Enrichment; (5) Fraud and Deceit; (6) Civil Conspiracy; and (7) Fraudulent Concealment. *Id.* ¶¶ 929-1077.

15.    The thrust of Plaintiffs' allegations against Walmart and the other Supply Chain Defendants is that they breached their duties to "monitor, detect, investigate, report, and refuse to fill suspicious orders of prescription opiates," failed to "maintain effective controls against the diversion of opioids into other than legitimate medical channels" and to "investigate, report, and take steps to halt orders that they knew or should have known were suspicious." *Id.* ¶¶ 63, 574, 960.

16.    This alleged conduct allegedly caused damage to Plaintiffs in the form of "increased financial burdens" as a result of unreimbursed costs for "providing healthcare and medical care . . . prescription drugs used to treat addiction . . . mental-health services, treatment, counseling, rehabilitation services, and social services . . . [and] treatment of infants born with opioid-related medical conditions or born dependent on opioids." *Id.* ¶ 858.

17.    Plaintiffs' claims allege a federal question because they are premised on the breach of duties whose only possible source is the CSA. Plaintiffs identify no state law—common law or statute—that gives rise to these purported duties regarding the distribution of opioids that Walmart and the other Supply Chain Defendants allegedly breached. The Kentucky provisions Plaintiffs cite do not establish any of the alleged duties relating to diversion of controlled substances and reporting and shipping of "suspicious" opioid medication orders. In fact, the Amended Complaint identifies no state statute or regulation that imposes an independent duty to monitor, investigate, and report suspicious orders of controlled substances or to prevent diversion.

18.    On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML")

formed a multidistrict litigation ("MDL") and transferred opioid-related actions to the Honorable

Dan A. Polster in the Northern District of Ohio, pursuant to 28 U.S.C. § 1407.   *See In re Nat'l*

*Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017) (forming a multidistrict litigation

and transferring opioid-related actions to the Honorable Dan A. Polster).

19.     Further underscoring the federal source of the duties Plaintiffs allege are the nearly

2,300 opioid-related actions currently pending in the MDL, including at least one action originally

filed in Kentucky state court[4] and numerous actions originally filed in this district.[5]

20.     Plaintiffs' allegations are nearly identical to the obligations certain Defendants in

---

[4] *See Commonwealth of Kentucky v. Cardinal Health 5, LLC et al.*, No. 3:18-cv-00184 (W.D. Ky.) (originally filed in state court, removed to federal court, and transferred to the MDL on Aug. 7, 2018).

[5] *See, e.g.*, *Fiscal Court of Cumberland Cty. v. AmerisourceBergen Drug Corp.*, No. 1:17-cv-00163 (W.D. Ky.) (transferred Dec. 12, 2017); *Fiscal Court of Allen Cty. v. AmerisourceBergen Drug Corp.*, No. 1:17-cv-00196 (W.D. Ky.) (transferred Jan. 10, 2018); *Green Cty. Fiscal Court v. AmerisourceBergen Drug Corp.*, No. 1:18-cv-00158 (W.D. Ky.) (transferred Nov. 27, 2018); *Louisville/Jefferson Cty. Metro Gov't v. AmerisourceBergen Drug Corp.*, No. 3:17-cv-00508 (W.D. Ky.) (transferred Dec. 12, 2017); *Fiscal Court of Spencer Cty. v. AmerisourceBergen Drug Corp.*, No. 3:17-cv-00557 (W.D. Ky.) (transferred Dec. 13, 2017); *Fiscal Court of Oldham Cty. v. AmerisourceBergen Drug Corp.*, No. 3:17-cv-00590 (W.D. Ky.) (transferred Dec. 14, 2017); *Fiscal Court of Bullitt Cty. v. AmerisourceBergen Drug Corp.,* No. 3:17-cv-00727 (W.D. Ky.) (transferred Jan. 10, 2018); *Baptist Healthcare Sys., Inc. v. AmerisourceBergen Drug Corp.*, No. 3:18-cv-00558 (W.D. Ky.) (transferred Sep. 12, 2018); *Breckinridge Cty. Fiscal Court v. AmerisourceBergen Drug Corp.*, No. 3:18-cv-00714 (W.D. Ky.) (transferred Nov. 27, 2018); *Hardin Cty. Fiscal Court v. AmerisourceBergen Drug Corp.*, No. 3:18-cv-00715 (W.D. Ky.) (transferred Nov. 27, 2018); *Meade Cty. Fiscal Court v. AmerisourceBergen Drug Corp.*, No. 3:18-cv-00716 (W.D. Ky.) (transferred Nov. 11, 2018); *Fiscal Court of Union Cty. v. AmerisourceBergen Drug Corp.*, No. 4:17-cv-00120 (W.D. Ky.) (transferred Nov. 12, 2017); *Fiscal Court of Henderson Cty. v. AmerisourceBergen Drug Corp.*, No. 4:17-cv-00130 (W.D. Ky.) (transferred Dec. 14, 2017); *Fiscal Court of Hopkins Cty. v. AmerisourceBergen Drug Corp.*, No. 4:17-cv-00157 (W.D. Ky.) (transferred Dec. 21, 2017); *City of Henderson Kentucky v. AmerisourceBergen Drug Corp.,* No. 4:18-cv-00169 (W.D. Ky.) (transferred Nov. 27, 2018); *Fiscal Court of Carlisle Cty. v. AmerisourceBergen Drug Corp.*, No. 5:17-cv-00136 (W.D. Ky.) (transferred Dec. 12, 2017); *Fiscal Court of Christian Cty. v. AmerisourceBergen Drug Corp.*, No. 5:17-cv-00146 (W.D. Ky.) (transferred Dec. 14, 2017); *Fiscal Court of Marshall Cty. v. AmerisourceBergen Drug Corp.*, No. 5:17-cv-00147 (W.D. Ky.) (transferred Dec. 14, 2017).

the MDL are purportedly bound to by virtue of the CSA and its regulations. *See, e.g.*, 21 U.S.C. § 823(b), (e) (identifying the question whether a distributor has maintained "effective control against diversion" as one factor the DEA Administrator may consider in evaluating whether the distributor should be licensed to operate); *id.* § 832 (imposing requirements to identify and report suspicious orders); *id.* § 842(c)(1)(B) (setting penalty for failure to comply with requirements related to suspicious orders or for failing to "maintain effective controls against diversion of opioids"); 21 C.F.R. § 1301.74(b) (requiring distributors of controlled substances to "design and operate a system" that identifies "suspicious orders of controlled substances" and to report such orders to the DEA).

21.    Because any duties relating to diversion of controlled substances and reporting and shipping of "suspicious" opioid medication orders arise, if at all, exclusively from federal law—the CSA and its implementing regulations—Plaintiff necessarily pleads that alleged violations of federal law form the basis for its claims.

22.    Walmart has not responded to the Amended Complaint in state court.

23.    In accordance with 28 U.S.C. § 1446(a), a copy of the Amended Complaint is attached as **Exhibit A**.  A copy of the state court docket is attached as **Exhibit B**.  A copy of all other process, pleadings, and orders served on Walmart is attached as **Exhibit C**.

## TIMELINESS OF REMOVAL

24.    Walmart was served with the Amended Complaint on or about September 17, 2019.

25.    In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

26.    "If defendants are served at different times, and a later-served defendant files a

notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."  28 U.S.C. § 1446(b)(2)(C).

## PROPRIETY OF VENUE

27.    Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the Circuit Court of Warren County, Kentucky, where the state court action was pending prior to removal, is a state court within this federal district and division.

## BASIS OF REMOVAL

28.    Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiffs' claims present a substantial federal question under the CSA, 21 U.S.C. §§ 801, *et seq*.

29.    The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

30.    "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule."  *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) (citation omitted).  Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law."  *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)); *see Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action."); *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) ("Under the substantial-federal-question doctrine, a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right

under state law depends on the validity, construction, or effect of federal law.").[6]

**A.**   **Plaintiff's Claims Raise a Federal Issue That Is Necessarily Raised, Actually Disputed, Substantial, and Capable of Resolution in Federal Court.**

31.   "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

---

[6] Walmart need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior holdings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Breuer*, 538 U.S. at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "'Divestment of district court jurisdiction' should be found 'no more readily than 'divestment of state court jurisdiction,' given 'the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331.'" 565 U.S. 368, 379 (2012) (alterations omitted) (quoting *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 523 (3d Cir. 1998) (Alito, J., dissenting)).

32.     Where, as here, a purported state law claim is premised on violations of a duty contained in a federal statute, a federal court has jurisdiction over that claim.  *See Bd. of Comm'rs of Se. La. Flood Protection Auth.-East v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722-23 (5th Cir.), cert. denied, 138 S. Ct. 420 (2017) (concluding that federal question jurisdiction exists because claims were premised on failure to satisfy a standard of care established in federal statute)).  Federal jurisdiction is established if there is no "state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable," because the absence of any such state source "means that the duty would have to be drawn from federal law."  *Id.* at 723.  A claim premised on the breach of such a duty "cannot be resolved without a determination whether . . . federal statutes create [such] a duty," and therefore necessarily raises a federal question.  *Id.*; *see also Hughes v. Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170-71 (5th Cir. 2012) (plaintiff's state law claims gave rise to federal question jurisdiction because resolution of claims relied on duty contained in federal law).

33.     As set forth below, all four requirements for federal jurisdiction over Plaintiffs' claims are satisfied.

34.     Although Plaintiffs ostensibly plead their claims against Walmart and the other Supply Chain Defendants as state law claims, they base the underlying theory of liability on alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA.

35.     Plaintiffs do not identify any Kentucky authority to serve as the basis of their claims against Walmart and the other Supply Chain Defendants, although they purport to do so.  The authority Plaintiffs cite does not require wholesale pharmaceutical distributors to identify and report suspicious orders of controlled substances to state government officials or entities, nor does it require wholesale pharmaceutical distributors to halt, prevent, or avoid filling suspicious orders.

Instead, the authority Plaintiffs cite simply establishes certain storage and record-keeping requirements, KRS § 218A.200(2), and establishes criminal penalties for violations of Kentucky trafficking and criminal conspiracy laws.  KRS §§ 218A.1402, 218A.1405.  Plaintiffs therefore have pleaded federal questions merely dressed up as state law claims.

36.    Under the artful pleading doctrine, Plaintiffs may not escape federal jurisdiction merely by omitting citations to the federal statutes and regulations that serve as the exclusive bases for Plaintiffs' claims.  *See Mikulski*, 501 F.3d at 560 ("[P]laintiffs may not avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims") (citations and quotation marks omitted).  Where it appears that the Plaintiffs may have carefully crafted the complaint to circumvent federal jurisdiction, this Court should "consider whether the facts alleged in the complaint actually implicate a federal cause of action." *Id. at 561*; *see also Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 358 (6th Cir. 2015); *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).

37.    Specifically, Plaintiffs plead that Walmart and the other Supply Chain Defendants violated federal law by failing to:

> a.    "[M]onitor, detect, investigate, report, and refuse to fill suspicious orders of prescription opiates." Am. Compl. ¶ 63;
>
> b.    "[M]aintain effective controls, and to investigate, report, and take steps to halt orders that they knew or should have known were suspicious."  *Id.* ¶ 574.
>
> c.    "[C]ontrol the supply chain or to report and take steps to halt suspicious orders. . . and to institute controls to prevent diversion."  *Id.* ¶¶ 645, 907.
>
> d.    "[O]perate a system to stop orders which [are] flagged or should have been flagged as suspicious."  *Id.* ¶ 957.
>
> e.    "[E]ffectively monitor for suspicious orders . . . report suspicious orders [and] stop or suspend shipments of suspicious orders."  *Id.* ¶ 975 (c) – (e).

38.    The CSA and its implementing regulations are the exclusive source of the asserted

legal duties to prevent diversion and to monitor, investigate, and report suspicious orders of controlled substances. *See* 21 U.S.C. § 823(b), (e); *id.* § 832; *id.* § 842(c)(1)(B); 21 C.F.R. §§ 1301.71, .74(b).

39.     The source of the asserted legal duty to monitor, investigate, and report shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice.  Specifically, the DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc. v. DEA,* 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc., Revocation of Registration*, 72 Fed. Reg. 36,487, 36,501 (July 3, 2007), as source of DEA's "Shipping Requirement").

40.     Plaintiffs' theories of liability against Walmart and the other Supply Chain Defendants, as pleaded in the Amended Complaint, are thus predicated on allegations that they breached alleged duties under the CSA to implement effective controls against diversion and to detect and report "suspicious" orders for prescription opioids.

41.     The federal question presented by Plaintiffs' claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn,* 568 U.S. at 258.

42.     ***First***, Plaintiff's claims "necessarily raise[]" a federal question because the asserted right to relief under state law necessarily requires resolution of a federal question. *See Tenn. Gas Pipeline,* 850 F.3d at 722-23 (federal question necessarily raised where negligence and public nuisance claims relied on the court's interpretation of the scope of a duty of care contained in

federal law); *Hughes*, 478 F. App'x at 170-71; s*ee also North Carolina ex rel. N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *NASDAQ OMX Grp., Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1021-23 (2d Cir. 2014) (a duty derived from the Exchange Act to operate a fair and orderly market underpinned plaintiff's contract and tort claims and therefore necessarily raised a federal question); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law or if the action requires construction of a federal statute, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

43.     Plaintiffs' claims against Walmart and the other Supply Chain Defendants require Plaintiffs to establish that they breached duties established exclusively under federal law by failing to monitor, investigate, and report shipments of otherwise lawful orders or by otherwise failing to maintain controls against diversion.

44.     The Amended Complaint cites to various Kentucky laws it claims impose a duty on distributors of prescription medications to monitor prescription orders, *see* Am. Compl. ¶¶ 581-82, but none actually does.  This is because, as explained above, these duties necessarily arise under the federal CSA and regulations.

45.     While plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by exclusive reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiffs here necessarily rely on violations of federal law as the basis

for their purported state-law claims.[7]

46.     Although Plaintiffs refer to certain Kentucky statutes and claim they give rise to the same duties, *see* Am. Compl. ¶¶ 581-82, Plaintiffs nowhere identify any specific provision of state law that creates a duty for wholesale distributors of controlled substances to report or refuse to fill suspicious orders for prescription opioids.

47.     Plaintiffs moreover "may not defeat removal by omitting to plead necessary federal questions in a complaint." *Hughes,* 478 F. App'x at 171 (quoting *Franchise Tax Bd.*, 463 U.S. at 22).

48.     In sum, despite Plaintiffs' attempts to artfully omit any federal question, the Amended Complaint necessarily raises a federal issue—namely, whether Walmart and the other Supply Chain Defendants violated the CSA.

49.     **Second**, this federal issue is "actually disputed" because the parties disagree as to the existence and scope of alleged duties arising under the CSA and whether Walmart and the other Supply Chain Defendants violated any duties to monitor, detect, investigate, and report suspicious orders under the CSA.  Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

---

[7] Furthermore, it is not necessary for federal jurisdiction that Walmart establish that *all* of Plaintiffs' counts against it raise a federal question.  Even if Plaintiffs could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'"  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least some counts against Walmart and the other Supply Chain Defendants, it has supplemental jurisdiction over Plaintiffs' remaining counts which are so related that they "form part of the same case or controversy."  28 U.S.C. § 1367(a); *see Baker v. Farmers Elec. Co-op., Inc.*, 34 F.3d 274, 283 (5th Cir. 1994).

50.    **Third**, the federal issue presented by Plaintiffs' claim is "substantial."[8]  *Id.* at 258.

"The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal

system as a whole."  *Id.* at 260.  Among other things, the Court must assess whether the federal

government has a "strong interest" in the federal issue at stake and whether allowing state courts

to resolve the issue will "undermine 'the development of a uniform body of [federal] law.'"  *Id.* at

260-61 (quoting *Grable*, 545 U.S. at 315; *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S.

141, 162 (1989)).  As the Supreme Court explained in *Grable*, "[t]he doctrine captures the

commonsense notion that a federal court ought to be able to hear claims recognized under state

law that nonetheless turn on substantial questions of federal law, and thus justify resort to the

experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  545

U.S. at 312; *see also Willis of Tex., Inc. v. Stevenson*, No. H-09-cv-0404, 2009 WL 7809247, at *5

(S.D. Tex. May 26, 2009) ("The Fifth Circuit has held that a claim is substantial enough to support

federal question jurisdiction if the issue raised is not wholly insubstantial, obviously frivolous,

plainly insubstantial, or obviously without merit.").

51.    Plaintiffs' theories of liability necessarily require that a court determine a question

relating to the important federal issue of regulation of controlled substances.  Indeed, Congress

recognized the importance of a nationwide approach to controlled substances in enacting the CSA.

H.R. Rep. No. 91-1444 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72 (noting one

purpose of the CSA was "provid[e] the . . . drug industry with a unified approach to narcotic and

dangerous drug control."

---

[8] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from
the underlying merits of Plaintiffs' claims and has no bearing on the strength of those claims.
*See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance
of the issue to the federal system as a whole.").

52.     The text of the CSA itself notes the federal interest in regulating controlled substances in a uniform manner.  21 U.S.C. § 801 (2), (6) (recognizing the illegal uses of controlled substances "have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic").  Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution of controlled substances "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable*."  *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 n.5 (1st Cir. 2016).

53.     Plaintiffs' attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action.  In *Grable*, the Supreme Court held that lack of a federal cause of action does not foreclose federal-question jurisdiction.  The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one."  *Grable*, 545 U.S. at 317; *see also, e.g.*, *Ranck v. Mt. Hood Cable Reg. Comm'n*, No. 3:16-cv-02409-AA, 2017 WL 1752954, at *4-5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy Grable even though no private right of action exists under Act).

54.     Removal is especially appropriate here because Plaintiffs' action is one of thousands of similar actions nationwide, most of which are pending in the Opiate MDL in the Northern District of Ohio.  Indeed, Plaintiffs claim that the "opioid epidemic" is "one of the nation's most pressing health management issues, not only because of its toll on patients, but increasingly because of the financial impact" on the entire healthcare system.  Am. Compl. ¶¶ 2,

25. The Opiate MDL bellwether proceedings have substantially advanced and are set for trial in October 2019.

55.     **Fourth**, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements in a manner in tension or in conflict with the way the federal agency tasked with enforcing the CSA—the DEA—applies them. Federal jurisdiction is therefore properly exercised under Section 1331 to resolve "disputed issues of federal law" under the CSA.

56.     In sum, removal of this action is appropriate because Plaintiffs' "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also See Bd. of Commissioners*, 850 F.3d at 722-23; Hughes, 478 F. App'x at 170-71; *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'" (quoting *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006))).

### B.     The Court Can Exercise Supplemental Jurisdiction.

57.     To the extent that the Court determines that some, but not all, of Plaintiffs' claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a), which grants district court jurisdiction over state claims forming part of the same case or controversy. *See Baker v. Farmers Elec. Co-op., Inc.*, 34 F.3d 274, 283 (5th Cir. 1994).

58.     It is not necessary for federal jurisdiction to establish that all of Plaintiffs' counts raise a federal question.  Even if Plaintiffs could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'"  *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).  Instead, "federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that derive from a common nucleus of operative fact."  *Id.* at 164-65 (internal quotation omitted); *see also Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rough Par.*, 373 F. App'x 438, 441 (5th Cir. 2010) (exercising jurisdiction to review state law claims even though federal law claims were not on appeal because the district court had properly exercised supplemental jurisdiction over the state law claims).

59.     Because, as explained above, the Court has original jurisdiction over at least some counts against Walmart and the other Supply Chain Defendants, it has supplemental jurisdiction over Plaintiffs' remaining counts against Walmart and the other Supply Chain Defendants, including the putative state law pharmacy claims against the National Retail Pharmacy Defendants, which are so related that they "form part of the same case or controversy."

60.     The presence of state law claims, if any, therefore does not defeat this Court's original jurisdiction over the federal claims.

## **OTHER REMOVAL ITEMS**

61.     Under 28 U.S.C. § 1446(b)(2)(A), all Defendants that have been properly joined and served must join or consent to removal.

62.     The following Defendants have been served in this action and consent to removal,

as indicated by counsel's signatures below: Purdue Pharma L.P.; Purdue Pharma, Inc.; The Purdue Frederick Company, Inc.;[9] Mark Timney; Russell Gasdia; Tessa F. Rios; Amy K. Thompson; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co.; Abbott Laboratories; Abbott Laboratories, Inc.; Endo Pharmaceuticals, Inc.; Mallinckrodt, LLC; SpecGX LLC; Assertio Therapeutics, Inc. f/k/a Depomed, Inc.; AmerisourceBergen Drug Corporation; Cardinal Health, Inc.; Henry Schein, Inc.; Miami-Luken, Inc.; Richie Pharmacal Co.; CVS Health Corporation; CVS Pharmacy, Inc.; CVS Indiana, L.L.C.; Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center, Inc.; Walgreens Boots Alliance, Inc.; Walgreen Co.; and Walgreen Eastern Co., Inc. ("Walgreens").

63.     The remaining Defendants have not been properly served, and thus their consent to removal is not required.   Nevertheless, out of an abundance of caution, John Stewart; Teva

_____

[9] On September 15, 2019, Purdue and its affiliated debtors filed voluntary bankruptcy petitions for relief under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York.  The case is docketed as *In re Purdue Pharma L.P.*, No. 19-23649, and is pending before U.S. Bankruptcy Judge Robert D. Drain.  Pursuant to 11 U.S.C. § 362, this filing operates as a stay as to Defendants Purdue Pharma L.P. and Purdue Pharma Inc. (the "Purdue Debtors").  Moreover, on October 11, 2019, Judge Drain issued an Order pursuant to 11 U.S.C. § 105(a), enjoining the commencement or continuation of litigation against the Purdue Debtors and certain related parties (including The Purdue Frederick Company Inc.; Richard Sackler; Beverly Sackler; David Sackler; Ilene Sackler Lefcourt; Jonathan Sackler; Kathe Sackler; Mortimer D.A. Sackler; Theresa Sackler; John Stewart; Mark Timney; Russell Gasdia; Tessa F. Rios; and Amy K. Thompson) through November 6, 2019.  To the extent consent is required, Purdue; John Stewart; Mark Timney; Russell Gasdia; Tessa F. Rios; and Amy K. Thompson consent to removal.  By consenting to removal, none of the defendants waive any right or defense and expressly reserve them, including in connection with the Bankruptcy Court's stay as well as all rights and defenses in this action, including lack of personal jurisdiction.

Pharmaceutical Industries Ltd.;[10] Watson Laboratories, Inc.; Actavis Pharma, Inc. f/k/a Watson Pharma Inc.; Actavis LLC; Noramco, Inc.; Endo Health Solutions, Inc.; Allergan plc f/k/a Actavis plc;[11] Watson Pharmaceuticals, Inc.; and Anda, Inc. consent to removal.  The Defendants listed in this paragraph expressly reserve, and do not waive, all defenses related to service of process and personal jurisdiction.

64.     By filing this Notice of Removal, Walmart and the consenting Defendants expressly reserve, and do not waive, any and all defenses that may be available to them, including those related to personal jurisdiction and service of process.  If any question arises as to propriety of removal to this Court, Walmart requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

65.     Pursuant to 28 U.S.C. § 1446(d), Walmart will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff.

66.     Walmart reserves the right to amend or supplement this Notice.

**WHEREFORE**, Walmart removes this action, now pending in the Circuit Court of Warren County, Civil Division 1, Kentucky, case number 19-CI-01146, to this Court.

 DATED: October 17, 2019

                                                              Respectfully submitted,

                                                              By: */s/* Andrew L. Sparks
                                                              Andrew L. Sparks
                                                              DICKINSON WRIGHT PLLC

---

[10] Teva Pharmaceutical Industries Ltd. ("Teva Ltd") is a foreign company and it is not subject to personal jurisdiction in the United States.  Teva Ltd. expressly reserves all defenses, including those related to personal jurisdiction and service of process.

[11] Allergan plc f/k/a Actavis plc, an Irish corporation, disputes that it has been served but nevertheless consents to removal out of an abundance of caution and expressly reserves all rights and defenses including those related to personal jurisdiction and service of process.

300 West Vine Street, Suite 1700
Lexington, Kentucky  40507
Telephone: (859) 899-8700
Facsimile: (844) 670-6009
asparks@dickinsonwright.com

Christopher Lovrien*
Sarah G. Conway*
JONES DAY
555 S. Flower St., 50th Floor
Los Angeles, CA 90071
(213) 243-2567
cjlovrien@jonesday.com
sgconway@jonesday.com

* pro hac vice admission forthcoming

*Attorneys for Walmart Inc. and Wal-Mart
Stores East, LP*

**Consent to Removal**:

/s/ Jennifer A. Lynch
Jennifer A. Lynch (KY Bar #95933)
Cipriani & Werner, PC
500 Lee Street, East, Suite 900
Charleston, WV 25301
Telephone: (304) 341-0500
Facsimile: (304) 341-0507
jlynch@c-wlaw.com

*Counsel for Purdue Pharma L.P., Purdue
Pharma Inc., and The Purdue Frederick
Company Inc.*

**Consent to Removal**:

/s/ Kevin H. Marino, Esq.
Kevin H. Marino, Esq.
Marino, Tortorella & Boyle, P.C.
437 Southern Boulevard
Chatham, NJ  07928-1488
Phone:  973-824-9300
Fax:  973-824-8425

*Attorney for John Stewart*

**Consent to Removal**:

*/s/* John M. Potter
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
John M. Potter
50 California Street, 22nd Floor
San Francisco, California 94105
(415) 875-6600
johnpotter@quinnemanuel.com

Joseph Sarles
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
josephsarles@quinnemanuel.com

*Attorneys for Mark Timney*

**Consent to Removal**:

*/s/ Julie B. Porter*
Julie B. Porter
Salvatore Prescott & Porter, PLLC
1010 Davis Street
Evanston, IL 60201
P: (312) 283-5711
F: (312) 724-8353
porter@spplawyers.com

*Attorney for Russell J. Gasdia*

**Consent to Removal**:

KIGHTLINGER & GRAY, LLP

/s/ R. Jeffrey Lowe
R. Jeffrey Lowe, Atty No. 87430
KIGHTLINGER & GRAY, LLP
312 South Fourth Street, Suite 700
Marion E. Taylor Building
Louisville, KY 40202
(502) 442-2295
jlowe@k-glaw.com

-21-

KIGHTLINGER & GRAY, llp
3620 Blackiston Blvd.
Bonterra Building, Suite 200
New Albany, IN 47150
(812) 949-2300
Fax:  (812) 949-8556

*Counsel for Defendants, Tessa F. Rios and Amy K. Thompson*

**Consent to Removal**:

/s/ Trent Spurlock
Trent Spurlock
Catherine A. Stivers
DINSMORE & SHOHL LLP
101 S. Fifth Street, Suite 2500
Louisville, Kentucky 40202
(502) 540-2300
trent.spurlock@dinsmore.com
cassie.stivers@dinsmore.com

Steven A. Reed (*pro hac vice forthcoming*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
Tel: (215) 963-5603
Fax: (215) 963-5001
steven.reed@morganlewis.com

Wendy West Feinstein (*pro hac vice forthcoming*)
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA 15219-6401
Tel: (412) 560-7455
wendy.feinstein@morganlewis.com

Brian M. Ercole (*pro hac vice forthcoming*)
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard
Suite 5300
Miami, FL 33131-2339
Tel: (305) 415-3416
Fax: (305) 415-3001
brian.ercole@morganlewis.com

*Counsel for Defendants Teva Pharmaceuticals USA, Inc.; Watson Laboratories, Inc.; Actavis Pharma, Inc. f/k/a Watson Pharma Inc.; Actavis LLC and Cephalon, Inc.*

**Consent to Removal**:

Counsel for Defendants JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.:

*/s/* Ryan T. Polczynski
E. Frederick Straub, Jr., Esq.
Ryan T. Polczynski, Esq.
Whitlow, Roberts, Houston & Straub, PLLC
300 Broadway, Post Office Box 995
Paducah, Kentucky 42002-0995
Telephone: (270) 443-4516
Facsimile: (270) 442-1712
Estraub@whitlow-law.com
rtp@whitlow-law.com

Charles Lifland*
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071
213-430-6000
clifland@omm.com

Steve Brody*
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
sbrody@omm.com

*\* denotes national counsel who will seek pro hac vice admission*

**Consent to Removal**:

*/s/ Daniel G. Jarcho*
Daniel G. Jarcho*
D.C. Bar No. 391837
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3254
Facsimile: (202) 239-333
E-mail: daniel.jarcho@alston.com

Cari K. Dawson*
Georgia Bar No. 213490
Jenny A. Hergenrother*
Georgia Bar No. 447183
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777
E-mail: cari.dawson@alston.com
E-mail: jenny.hergenrother@alston.com

*Denotes national counsel who will seek pro hac vice admission

*Attorneys for Noramco, Inc.*

**Consent to Removal**:

/s/ John A. McCauley
John A. McCauley*
VENABLE LLP
750 E. Pratt St., Ste. 900
Baltimore, MD 2102
t: 410-244-7655
Fax: (410) 244-7742
JMcCauley@Venable.com

* Denotes national counsel who will seek pro hac vice admission

*Counsel for Defendants Abbott Laboratories and Abbott Laboratories Inc.*

**Consent to Removal**:

/s/ W. Kennedy Simpson
W. Kennedy Simpson
THOMPSON MILLER & SIMPSON PLC
734 West Main Street, Suite 400
Louisville, Kentucky 40202
(502) 585-9900
ksimpson@tmslawplc.com

*Counsel for Defendants H. D. Smith, LLC
f/k/a H. D. Smith Wholesale Drug Company*

**Consent to Removal**:

/s/ Shannon E. McClure
Shannon E. McClure*
Robert A. Nicholas*
REED SMITH LLP
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
(215) 851-8100
RNicholas@ReedSmith.com
SMcClure@ReedSmith.com

*\* denotes national counsel who will seek pro
hac vice admission*

*Attorneys for AmerisourceBergen Drug
Corporation*

**Consent to Removal**:

/s/ Kevin Sadler
Kevin Sadler*
Baker Botts L.L.P.
1001 Page Mill Rd., Bldg 1, Suite 200
Palo Alto, CA 94304-1007
kevin.sadler@bakerbotts.com
(650) 739-7500

*Attorney for Assertio Therapeutics, Inc. f/k/a
Depomed, Inc.*

*\* denotes national counsel who will seek pro
hac vice admission*

**Consent to Removal**:

/s/ Kirk Ogrosky
Kirk Ogrosky
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
(202) 942-5000
Kirk.ogrosky@arnoldporter.com

*Attorneys for Endo Health Solutions, Inc. and*
*Endo Pharmaceuticals, Inc.*

**Consent to Removal**:

/s/ Jessalyn H. Zeigler
Jessalyn H. Zeigler
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6289
JZeigler@bassberry.com

*Counsel for Defendants Mallinckrodt LLC*
*and SpecGx LLC*

**Consent to Removal**:

/s/ Ana M. Francisco
James W. Matthews*
Ana M. Francisco*
Katy E. Koski*
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel: 617.342.4000
Fax: 617.342.4001
Email: jmatthews@foley.com
          kkoski@foley.com
          afrancisco@foley.com

*\* denotes national counsel who will seek*
*pro hac vice admission*

*Attorneys for Defendant Anda, Inc.*

**Consent to Removal**:

/s/ Steven B. Loy
Steven B. Loy
Perry M. Bentley
Monica H. Braun
Stoll Keenon Ogden PLLC
300 West Vine Street, Suite 2100
Lexington, KY  40507-1801
Telephone:  (859) 231-3000
Fax:  (859) 253-1093
steven.loy@skofirm.com
perry.bentley@skofirm.com
monica.braun@skofirm.com

*Counsel for Defendant Cardinal Health, Inc.*

**Consent to Removal**:

/s/ Christopher L. Thacker
Christopher L. Thacker, Esq.
Billings Law Firm, PLLC
145 Constitution St.
Lexington, Kentucky 40507
Telephone:     (859) 225-5240
Facsimile:     (859) 225-5241
cthacker@blfky.com

*Counsel for Henry Schein, Inc.*

**Consent to Removal**:

/s/ Richard H. Blake
Richard H. Blake
McDonald Hopkins - Cleveland
Ste. 2100
600 Superior Avenue, E
Cleveland, OH 44114
216-348-5400
Fax: 216-348-5474
Email: rblake@mcdonaldhopkins.com

*Attorney for Miami-Luken, Inc.*

**Consent to Removal**:

/s/ Thomas N. Kerrick
Thomas N. Kerrick
Matthew P. Cook
Kerrick Bachert PSC
1025 State Street
P.O. Box 9547
Bowling Green, KY 42101
(270) 782-8160

*Counsel for Richie Pharmacal Co.*

**Consent to Removal**:

*/s/* Robert E. Stopher
Robert E. Stopher
Robert D. Bobrow
BOEHL STOPHER & GRAVES, LLP
400 West Market Street, Suite 2300
Louisville, KY 40202
Phone:  (502) 589-5980
Fax:  (502) 561-9400

Conor B. O'Croinin*
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202–1031
(410) 949–1160
cocroinin@zuckerman.com

* pro hac vice admission forthcoming

*Attorneys for CVS Health Corporation; CVS
Pharmacy, Inc.; CVS Indiana, L.L.C.*

**Consent to Removal**:

/s/ Elisabeth S. Gray
Mark S. Fenzel
Elisabeth S. Gray
Middleton Reutlinger
401 S. Fourth Street, Suite 2600
Louisville, KY  40202
Phone: (502) 584-1135
mfenzel@middletonlaw.com

egray@middletonlaw.com

*Counsel for Defendant Rite Aid of Maryland,*
*Inc.*

**Consent to Removal**:

/s/ Frank K. Tremper
Mark G. Arnzen (#01830)
Frank K. Tremper (#94095)
ARNZEN, STORM & TURNER, P.S.C.
600 Greenup Street
Covington, Kentucky 41011
(859) 431-6100
(859) 431-3778
marnzen@arnzenlaw.com
ftremper@arnzenlaw.com

*Attorneys for Walgreens Boots Alliance, Inc.;*
*Walgreen Co.; and Walgreen Eastern Co.,*
*Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew L. Sparks, hereby certify that the foregoing document will be served via the

Court's ECF system to ECF registrants and/or U.S. Mail on October 17, 2019.


<u>/s/ Andrew L. Sparks</u>